**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

NATIONS LENDING CORPORATION,

                      Plaintiff,

        -vs-

CMG MORTGAGE, INC. *et al*.,

                      Defendants.

Case No. 1:25-cv-00063

JUDGE DAVID A. RUIZ

**MEMORANDUM OPINION & ORDER**

### I. Procedural Background

In this case, Plaintiff Nations Lending Corporation ("Plaintiff," or "NLC") alleges claims against two former employees and their new employer. (R. 1-1). The individually named Defendants—Mina Galab, Eric Estevez—filed a joint Motion to Dismiss, asserting the claims in the Complaint are subject to mandatory arbitration. (R. 6). Their new employer, Defendant CMC Mortgage, Inc. ("CMC"), also filed a Motion to Dismiss the same day. (R. 5). Plaintiff filed opposition briefs to both motions to dismiss. (R. 8 & 9). Defendants filed reply briefs in support of their respective motions. (R. 11 & 12).

## II. Factual Allegations and Causes of Action Alleged

The Complaint asserts Plaintiff is "one of the fastest-growing mortgage lenders in the United States…." (R. 1-1, PageID# 10-11, ¶1). CMC is allegedly a direct competitor of Plaintiff, while Defendants Galab and Estevez are former branch managers in New Jersey. *Id*. at ¶¶2-3.[1]

On December 2, 2022, Nations Lending and Estevez entered into an employment agreement, attached to the Complaint as Exhibit A. (R. 1-1, PageID# 12, ¶¶8-9).  To facilitate Estevez's performance as a Producing Branch Manager, Plaintiff ostensibly shared "Confidential Information" with Estevez. (R. 1-1, PageID# 12-13, ¶¶11-12). Plaintiff sought to protect its Confidential Information through the employment agreement, which included a confidentiality provision requiring Estevez to "maintain the confidentiality of and protect and safeguard the secrecy of the Company's Inventions, Intellectual Property rights, and Confidential and Proprietary Information." (R. 1-1, PageID# 13, ¶12, *citing* Estevez's Employment Agreement, at Section 6). The employment agreement with Estevez also contained three restrictive covenants: non-solicitation of company employees; non-solicitation of company customers, and a covenant not to compete. (R. 1-1, PageID# 13, ¶15, *citing* Estevez's Employment Agreement, Section 9).

On December 2, 2022, Nations Lending and Galab entered into an employment agreement, attached to the Complaint as Exhibit B. (R. 1-1, PageID# 13, ¶16). As with Estevez, Plaintiff shared "Confidential Information" with Galab to facilitate her performance as a Producing Branch Manager. (R. 1-1, PageID# 14, ¶19). Nations Lending also agreed to provide Galab with its

---

[1] Unidentified "JOHN DOES 1-3" are alleged to be individuals who assisted or participated with the other Defendants in facilitating and carrying out the conduct giving rise to this Complaint. (R. 1-1, PageID# 11, ¶4).

2

Customer Information. (R. 1-1, PageID# 15, ¶20). A confidentiality provision was included in

Galab's employment agreement (R. 1-1, PageID# 15) to "maintain the confidentiality of and protect

and safeguard the secrecy of the Company's Inventions, Intellectual Property rights, and

Confidential and Proprietary Information." (R. 1-1, PageID# 13, ¶12, *citing* Galab's Employment

Agreement, at Section 5(b)(ii)). The employment agreement with Galab similarly contained three

restrictive covenants that applied during her employment and for one-year thereafter: non-

solicitation of company employees; non-solicitation of company customers, and a covenant not to

compete. (R. 1-1, PageID# 16-18, ¶¶24-26, *citing* Galab's Employment Agreement, Section 5(b)(i)-

(iii)).[2]

It is alleged that in May of 2024, Galab and Estevez entered into secret discussions with

Defendant CMG, and that Galab and Estevez agreed to solicit and divert Nations Lending's

business contracts and business relationships to CMG. (R. 1-1, PageID# 20, ¶¶39, 41). While still

Plaintiff's employees and subject to the non-solicitation of employees covenant, Galab and Estevez

nevertheless proceeded to solicit several of Plaintiff's employees. (R. 1-1, PageID# 21, ¶43). It is

also alleged that "Galab and Estevez made numerous misrepresentations and concealments to

Nations Lending's customers." (R. 1-1, PageID# 21, ¶45).  The Complaint further alleges that

"Galab and Estevez fraudulently misrepresented that: Nations Lending was engaging in transactions

with consumers; Nations Lending would maintain the consumers' confidential information; and

Nations Lending would originate and close the consumers' transactions." *Id*. at ¶46. It is asserted

---

[2] Galab and Plaintiff also entered into a Bonus Advance Agreement that required Galab to complete at least 24 continuous months of continuous employment with Nations Lending. (R. 1-1, PageID# 18-19, ¶¶28-36, Exh. C.)

that Galab and Estevez "concealed their true employment with CMG Mortgage." (R. 1-1, PageID# 22, ¶49).  "In the alternative, Galab and Estevez disclosed that they were working on CMG Mortgage's behalf and diverted Nations Lending's customers or prospective customers in violation of their fiduciary duties to their employer, Nations Lending." *Id.* at ¶50. Thereafter, on June 10, 2024, Galab and Estevez terminated their employment relationship with Plaintiff. *Id.* at ¶51.

Immediately after terminating their employment, Galab and Estevez reported to the National Mortgage Licensing System that they were branch managers associated with Defendant CMG. (R. 1-1, PageID# 22, ¶52). Eight employees of Plaintiff followed suit, and began working for Defendant CMG. *Id.* at ¶¶53-54. It is further alleged that when Galab and Estevez terminated their employment with Plaintiff, its "customers also terminated their contracts or business relationships with Nations Lending and thereafter formed contracts and business relationships with CMG Mortgage." (R. 1-1, PageID# 23, ¶55).

The Complaint asserts the following causes of action: (1) breach of employment agreement against Galab and Estevez; (2) breach of bonus advance agreement against Galab; (3) breach of fiduciary duty against Galab and Estevez; (4) unjust enrichment against Galab and Estevez; (5) a violation of the Lanham Act against all Defendants; (6) violations of O.R.C. § 4165.02 against all; Defendants; (7) tortious interference with business contracts against all Defendants; (8) tortious interference with business relationships against all Defendants; (9) violation of Federal Defend Trade Secrets Act against all Defendants; (10) violation of the Ohio Trade Secrets Act against all Defendants; (11) civil conspiracy against all Defendants; (12) violation of Federal Civil RICO, 18

4

U.S.C. §5 1961-1968, *et seq*. against all Defendants; and (13) Preliminary and Permanent Injunction against all Defendants.[3]

### III. Analysis

**A. Applicable Law**

The Federal Arbitration Act ("FAA") "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006); *accord In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377, 381 (6th Cir. 2020). The Sixth Circuit has explained:

> It provides that a "written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, ... or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts must, consistent with this text, " 'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013) (citation omitted). And we resolve "any doubts concerning the scope of arbitral issues ... in favor of arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010).

*In re: Auto. Parts Antitrust Litig.*, 951 F.3d at 381.

As explained by a recent decision from this District:

The Sixth Circuit has set forth four tasks a court must engage in when considering a motion to stay proceedings and compel arbitration:

> First, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable; and fourth, if the court concludes that some, but not all, of the

---

[3] The Court construes this thirteenth "cause of action" for  Preliminary and Permanent Injunction as a prayer for relief.

5

> claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*McGee v. Armstrong*, 941 F.3d 859, 856 (6th Cir. 2019) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). "[A]ny ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout*, 228 F.3d at 714.

*Reulbach v. Life Time Fitness, Inc.*, No. 1:21 CV 1013, 2021 WL 2581565, at *4 (N.D. Ohio June 23, 2021) (Gaughan, J.).

**B. The Galab and Estevez Arbitration Agreements**

Plaintiff raises twelve causes of action against defendant Estevez and thirteen against Defendant Galab—all of which stem from their employment with Plaintiff.

**1. Galab's Employment Agreement**

Plaintiff attached to the Complaint a "Nations Lending Corporation Employment Agreement" between itself and Defendant Galab. (R. 1-1, PageID# 153-165, Exh. B). Section 11 of the employment agreement contains the following provision:

> 11. ARBITRATION. Any disagreement, dispute, controversy, or claim of any kind ("claims") arising out of or in connection to this Agreement, *including any claims related to Employee's hiring, employment or the termination of Employee's employment, and including any claims that may arise between Employee and Company's owners, officers, directors, managers, employees, or agents in their capacity as such, shall be resolved by arbitration* under the Federal Arbitration Act, Chapters 1 and 2, to the exclusion of inconsistent state laws, *whether such claims are based in tort, contract, statute, equity, or otherwise*. Employee agrees to waive all rights to a jury trial and waives the right to pursue any class action, collective action, or representative claims to the maximum extent allowed by law. To the extent a class or collective action or representative claim may not be waived, the Employee agrees to stay any such claims until after all claims subject to arbitration are fully resolved.
>
> ***
>
> (b) Arbitrator. *Except for the excluded claims, disputes will be settled by binding arbitration administered by the American Arbitration Association before a qualified individual agreed to by the parties or designated pursuant to its Employment*

6

> *Arbitration Rules and Mediation Procedures* (a copy of which may be found online at https://www.adr.org/Rules). The Optional Rules for Emergency Measures of Protection are incorporated by the parties. The standard provisions of the Employment Arbitration Rules shall apply. Claims shall be heard by a single arbitrator, unless the claim amount exceeds $250,000.00, in which case the dispute may be heard by a panel of three arbitrators.

(R. 1-1, PageID# 163-164; Exh. B) (emphasis added).

Plaintiff has not challenged the authenticity or validity of this agreement, nor could it reasonably do so as it attached said agreement to its Complaint in support of its claims. Plaintiff, however, points to another provision of the agreement, which discusses jurisdiction and venue, and states as follows: "Any action or proceeding by either of the parties to enforce this Agreement shall be brought only in accordance with the arbitration provision contained within this Agreement *except that action may be brought in a state or federal court located in the state of Ohio or the state of Employee's primary residence*, if different, *for the purposes of obtaining a restraining order or injunction against a violation of provisions of this Agreement* or to enforce a judgment rendered in accordance with the results of arbitration between the parties." (R. 1-1, PageID# 163, Exh. B) (emphasis added).

### 2. Estevez's Employment Agreement

Plaintiff also attached to the Complaint a "Supplement C to the Employment Agreement Arbitration Agreement" between itself and Defendant Estevez. (R. 1-1, PageID# 56, Exh. A). It contains the following language:

> Agreeing to submit any and all employment-related claims to final and binding arbitration is a term and condition of employment, unless such requirement is otherwise prohibited under state or federal law. By accepting or continuing employment with the Company, an employee automatically agrees that **arbitration is the exclusive remedy for all disputes arising out of or related to his or her employment with the Company**. Both the employee and the Company agree to waive all rights to civil suit in favor of binding arbitration. Notwithstanding

7

these provisions, *Company may seek and obtain injunctive relief to enforce the Restrictive Covenants of the employee's Employment Agreement* from a court of competent jurisdiction.

(R. 101, PageID# 56, Exh. A) (emphasis added). Supplement C to this agreement expressly states that: "The Federal Arbitration Act and commercial rules of the American Arbitration Association ('AAA") shall apply to and govern the arbitration." (R. 1-1, PageID# 56).

## C.     Analysis

Defendants Galab and Estevez argue that the above-cited mandatory arbitration clauses in their respective employment agreements cover all claims in this lawsuit and that Plaintiff's claims should, therefore, be dismissed. (R. 6-1, PageID# 248). Defendants aver that the language of these agreements is clear and unambiguous and that all claims arising from or related to their employment agreements, including hiring, employment, termination, or post-employment obligations, must be resolved in binding arbitration. *Id*. at PageID# 250.[4]

Plaintiff counters that employment agreements expressly allow Nations Lending the right to commence an action for the purposes of obtaining a restraining order or injunction, and nothing in the forum-selection provision or anywhere else in the employment agreements restricts Nations Lending from joining other claims to such an action. (R. 9, PageID# 288). Plaintiff's argument turns well-established law on its head. As alluded to above, "there is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the

---

[4] Defendants acknowledge that there is an exception to mandatory arbitration where Nations Lending seek solely limited injunctive relief to enforce the restrictive covenants. (R. 6-1, PageID# 250). Nevertheless, Defendants assert this provision is inapplicable because Plaintiff is plainly seeking monetary damages stemming from a host of causes of action. *Id*.

asserted dispute." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (internal quotation marks omitted); *accord Lundholm v. Crosscountry Mortg., LLC*, No. 1:23-CV-0285, 2023 WL 8374526, at *3 (N.D. Ohio Dec. 4, 2023). Plaintiff's reading of the agreements does the polar opposite. Moreover, Plaintiff, as the "party resisting arbitration[,] bears the burden of proving that the claims at issue are unsuitable for arbitration." *Townsend v. Stand Up Mgmt., Inc.*, No. 1:18CV2884, 2019 WL 3729266, at *2 (N.D. Ohio Aug. 8, 2019) (*quoting Green Tree Financial Corp.- Alabama v. Randolph*, 531 U.S. 79, 91 (2000)). Plaintiff's construction would render the whole arbitration provision a nullity and read it right out of the agreement, as such construction would permit Plaintiff to avoid arbitrating its claims, despite the contract, so long as it includes a request for injunctive relief.

Furthermore, the Court is not persuaded by Plaintiff's suggestion that Federal Rule of Civil Procedure 18, which permits joinder of claims, and its unexplained footnote citations (R. 9, PageID# 288), can be used to eviscerate an arbitration clause. Defendants portray Plaintiff's argument as a thinly veiled attempt to circumvent the arbitrations provisions of the employment contracts. (R. 6-1, PageID# 252). The Court agrees. Despite Plaintiff raising twelve causes of action, all directly or indirectly implicating the employment agreements, and seeking monetary damages in recovery, Plaintiff adds on a "cause of action" labelled "Preliminary and Permanent Injunction." (R. 1-1, PageID# 37). This thirteenth cause of action, however, contains no factual averments but only legal conclusions that recite the elements necessary to obtain injunctive relief. There are no facts alleged supporting irreparable harm. *Id*. at PageID# 37-38.

Plaintiff's opposition brief makes the assertion that "Nations Lending intends to file a motion for a preliminary injunction and permanent injunction in short order." (R. 9, PageID# 288).

Despite ample time to do so, Plaintiff has still not filed any such motion, undermining its claim that irreparable harm is imminent.[5]

The Court finds it must enforce the terms of the arbitration agreements between Plaintiff and Defendants Galab and Estevez. In addition, both Galab and Estevez's employment agreements states that the American Arbitration Association's (AAA) rules will apply. (R. 1-1. PageID# 56, 164, 179). This is significant because the question of arbitrability, often referred to as a "gateway issue," may be a question that is reserved to the arbitrator to decide. The Supreme Court has held that under the FAA "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019) ("an agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other") (internal quotation marks and citations omitted). Generally, where a contract contains a provision that states the arbitration shall be governed by the rules of the AAA, the provision

---

[5] "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88 (1974) (citations omitted and internal quotation marks omitted). Monetary injuries, "however substantial, in terms of money, time and energy necessarily expended" are insufficient; compensatory damages or other corrective relief available  in the ordinary course of litigation, "weighs heavily against a claim of irreparable harm". *Id*. at 90. In other words, "[i]f money damages can compensate the moving party, a preliminary injunction is not appropriate." *SEIU Health Care Michigan v. Snyder*, 875 F. Supp. 2d 710, 723 (E.D. Mich. 2012).

amounts to a delegation to the arbitrator to decide the gateway issue of arbitrability. On this very issue, the Sixth Circuit Court of Appeals has stated:

> That brings us to the question in this case. In his arbitration agreement, Piersing agreed that "[t]he American Arbitration Association ('AAA') will administer the arbitration and the arbitration will be conducted in accordance with then-current [AAA Rules]." R. 61-4, Pg. ID 982. And those Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." R. 61-6, Pg. ID 989. The question for us is whether that's "clear and unmistakable" evidence that Piersing agreed to arbitrate "arbitrability."
>
> There are good reasons to think it is. To start, the AAA Rules clearly empower an arbitrator to decide questions of "arbitrability"—for instance, questions about the "scope" of the agreement. And it's long been settled that parties can incorporate outside documents into a contract if their agreement says as much. Piersing's agreement says as much: it expressly incorporates the AAA Rules into the agreement and even helpfully includes a link to the AAA's website, from which one can easily access the Rules. On its own terms, that's pretty compelling evidence that Piersing agreed to arbitrate "arbitrability."
>
> What the text suggests the case law confirms. The Supreme Court has itself said that the AAA Rules "provide that arbitrators have the power to resolve arbitrability questions." And the Court has itself relied on the incorporation of the AAA Rules to determine what the parties agreed to. It's true that the Court has yet to put these pieces together so as to resolve the question in this case. But there's no reason for our court to wait to finish the puzzle. There's little doubt about the final picture.
>
> Our own circuit's precedent counsels—and perhaps compels—the same outcome. In a recent decision, our court relied on the incorporation of the AAA Rules to find that the parties had "clearly and unmistakably" agreed to arbitrate "arbitrability."
>
> ***
>
> What's more, district courts in our circuit have long found that the incorporation of the AAA Rules provides "clear and unmistakable" evidence that the parties agreed to arbitrate "arbitrability." Just another persuasive reason for us to do the same. Finally, consider that every one of our sister circuits to address the question—eleven out of twelve by our count—has found that the incorporation of the AAA Rules (or similarly worded arbitral rules) provides "clear and unmistakable" evidence that the parties agreed to arbitrate "arbitrability." And the one remaining circuit has precedent suggesting that it would join this consensus. But to the extent that there's any ambiguity in our prior decisions, we officially do so today.

11

*Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844-46 (6th Cir. 2020) (citations omitted); *accord Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 582 (6th Cir. 2021) ("By incorporating the AAA rules, the parties agreed that an arbitrator would decide gateway questions of arbitrability."); *Kentucky Peerless Distilling, LLC v. Fetzer Vineyards Corp.*, 2022 WL 1156963 at *4 (W.D. Ky. Apr. 19, 2022).

Therefore, not only are the claims herein subject to arbitration, but the gateway issue regarding the scope of the arbitrability of Plaintiff's claims against Defendants Estevez and Galab is an issue to be addressed by the arbitrator. Pursuant to the binding authority cited above, the parties' contracts have clearly and unmistakably agreed to arbitrate arbitrability, by expressly incorporating the AAA rules and stating that they will apply.

Given the above authority, the Court finds that the causes of action asserted against Defendants Galab and Estevez are subject mandatory arbitration pursuant to the express terms of their employment contracts.

**D.     Stay or Dismissal**

The Court agrees with Defendants Estevez and Galab that the claims asserted against them should be sent to arbitration. The only question remaining for the Court, then, is whether to stay or dismiss the proceedings. Defendants have asked for dismissal. Plaintiff has not expressly requested a stay, but has opposed dismissal arguing against the applicability of the arbitration agreements to the case at bar.

The FAA provides, "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court ... shall on application of one of the parties stay the trial of the action until such arbitration has

been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. However, the Sixth Circuit acknowledges, without itself explicitly adopting, an approach from other circuits regarding the court's ability to dismiss an entire action "where it is clear the entire controversy between the parties will be resolved by arbitration." *Anderson v. Charter Commc'ns, Inc.*, 860 F. App'x 374, 380 (6th Cir. 2021) (*quoting Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769–70 (8th Cir. 2011)). That being said, the Sixth Circuit cautioned that a district court may abuse its discretion in deciding to dismiss an entire action where it is not clear that the arbitrator would resolve all claims, and when the plaintiff could face prejudicial statute-of-limitations hurdles to refiling the suit. *Id*.

As a result, the Court finds the more prudent course of action is to stay the proceedings in this matter against Defendants Galab and Estevez, pending the arbitration of Plaintiff's claims.

### IV. Conclusion

For the foregoing reasons, Defendants Galab and Estevez's Motion to Dismiss (R. 6) is GRANTED in part and DENIED in part. It is GRANTED to the extent it seeks to enforce the arbitration provisions in their employment agreements with Plaintiff. It is DENIED to the extent Defendants seek dismissal of Plaintiff's claims. This matter is hereby STAYED with respect to Defendants Galab and Estevez.

IT IS SO ORDERED.

*David A. Ruiz*
DAVID A. RUIZ
Date: March 23, 2026                                        UNITED STATES DISTRICT JUDGE

13